"JDGE DAVID GUADERRAMA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED

2023 FEB 24  PM 1:08

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
       DEPUTY

| | § | |
|---|---|---|
| **ERIK SALAIZ** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **EP23CV0086** |
| **AMRK ENTERPRISES INC,** | § | |
| d/b/a **PREMIUM CAPITAL FUNDS/** | § | |
| **PREMIUM CONSOLIDATION** | § | |
| a New York Limited Liability Company | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.     The Plaintiff is Erik Salaiz ("Plaintiff") a natural person, resident of the Western District

of Texas, and was present in Texas for all automated text messages, in this case in El Paso

County, Texas.

2.     Defendant AMRK ENTERPRISES d/b/a PREMIUM CAPITAL FUNDS/PREMIUM

CONSOLIDATION ("PCF" "Defendant") is New York limited liability company organized and

existing under the laws of New York and can be served via registered agent Albert Mizrahi at 290

Avenue W, Brooklyn NY, 11223.

**JURISDICTION AND VENUE**

3.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

4.      Personal Jurisdiction.  This Court has general personal jurisdiction over the Defendant, because they have repeatedly placed unauthorized text messages to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff.

5.      Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single unauthorized text message from Defendant PCF that are the subject matter of this lawsuit.

6.      This Court has venue over the Defendant because the illegal text messages at issue were sent by Defendant PCF, to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

7.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

2

9.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

21.     One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22.     An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23.     The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24.     Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25.     Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as

television program voting or more benevolent uses, such as making charitable donations.

26.    A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27.    Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28.    Plaintiff successfully registered his personal cell phone (XXX) XXX-1527 on the National Do-Not-Call Registry March 6, 2022 which was more than 31 days prior to receiving the alleged automated text messages.

29.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

30.    Defendant PCF is a loan broker and offers merchant cash advances ("MCA's") and lines of credit to businesses nationwide including Texas.

31.    Plaintiff received at least eleven (11) illegal unauthorized text messages to his personal cell phone ending in 1527 within a thirty-day period from Defendant PCF, soliciting business funding services ("the text messages"). *See Exhibit A.*

32.    The text messages do not identify Defendant PCF.

33.    On October 19, 2022, and October 27, 2022, Plaintiff responded to a text message from Defendant PCF for the sole purpose of identifying the company responsible for the text messages.

34.    On October 27,2022, Plaintiff received two emails from a representative from Defendant PCF named Mike Taylor advising Plaintiff to send bank statements and fill out their application

for a MCA. *See Exhibit B.*

35.    The emails Plaintiff received from Mike Taylor revealed the company responsible for the text messages.

36.    Plaintiff has never been a customer of Defendant PCF, that would constitute any sort of business relationship.

37.    Plaintiff did not give Defendant PCF, his prior express written consent to receive the text messages.

38.    The text messages Plaintiff received from Defendant PCF, has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, interference with the use of his phone, and consumption of battery life.

39.    Defendant PCF knowingly and willfully authorizes the sending of illegal automated text messages to millions of consumers' personal cell phones en mass soliciting their business funding services.

40.    Defendant PCF knowingly and willfully violates the TCPA for their financial benefit.

41.    Table below displays the text messages made to Plaintiff by Defendant PCF:

| __Number__ | __Date__ | __Time__ | __Caller ID__ | __Notes__ |
|:---:|:---:|:---:|:---:|:---:|
| **1.** | 10/03/2022 | 10:10 AM | 430-444-5137 | Text message |
| **2.** | 10/06/2022 | 11:32 AM | 430-444-5137 | Text message |

7

| | | | | |
|---|---|---|---|---|
| **3.** | 10/06/2022 | 2:11 PM | 430-444-5137 | Text message |
| **4.** | 10/07/2022 | 9:51 AM | 430-444-5137 | Text message |
| **5.** | 10/12/2022 | 9:38 AM | 430-444-5137 | Text message |
| **6.** | 10/12/2022 | 10:54 AM | 430-444-5137 | Text message |
| **7.** | 10/13/2022 | 9:02 AM | 430-444-5137 | Text message |
| **8.** | 10/13/2022 | 12:59 PM | 430-444-5137 | Text message |
| **9.** | 10/19/2022 | 9:41 AM | 430-444-5137 | Text message |
| **10.** | 10/26/2022 | 10:40 AM | 430-444-5137 | Text message |
| **11.** | 10/27/2022 | 9:30 AM | 430-444-5137 | Text message |

42.     The text messages Plaintiff received from Defendant PCF, were placed while knowingly

ignoring the national do-not-call registry. The text messages were placed without training their

agents/representatives on the use of an internal do-not-call policy.

43.     Plaintiff sent a request for Defendant PCF internal do not call policy on October 27, 2022

and February 06, 2023, to nro@premiumcapitalfund.com which is an email listed in their

privacy policy on the website they own and control https://premiumcapitalfund.com.

44.     Defendant PCF failed and/or refused to send Plaintiff a copy of any internal do not call policy.

45.     On information and belief, Defendant PCF, did not have a written do-not-call policy while they were sending Mr. Salaiz the text messages.

46.     No emergency necessitated none of the alleged text messages.

47.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE TEXT MESSAGES

48.     Defendant's text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

49.     Defendant's text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

50.     Defendant's text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

51.     Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

52.     The text messages were to Plaintiff's cellular phone ending in 1527 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for

any business purpose.

## COUNT ONE:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     The foregoing acts and omissions of Defendant PCF and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

55.     Defendant PCF sent unauthorized text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

56.     Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the text messages described above, in the amount of $500 per automated text message.

57.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

58.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     The foregoing acts and omissions of Defendant PCF and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

    b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

    c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

61.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

62.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

B.    A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for eleven (11) text messages.

E.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

F.    An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

G.    Such further relief as the Court deems necessary, just, and proper.

February 24, 2023,                               Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

12

12:31                          🔋 ⁂ 📶 .ıl 99%🔋



‹          👤     **+1 430-444-5137** ⌄          ⋮

Monday, October 3, 2022

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
[Premium Capital: Reply STOP to opt
out]
                                 10:10 AM

Thursday, October 6, 2022

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                                 11:32 AM

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                                 2:11 PM

Friday, October 7, 2022

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get      ⌄
this done.
                    9:51 AM

  ➕ |  ·|¦|·

‖‖          ◯          ‹

12:32                                    99%

< ⚫ **+1 430-444-5137** ⌄                ⋮

Wednesday, October 12, 2022

Hey, Jorge, this is Mike with **PCF**, I
have you approved **$128,585** paying
**$156,874** back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                              9:38 AM

Hey, Jorge, this is Mike with PCF, I
have you approved **$128,585** paying
**$156,874** back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                              10:54 AM

Thursday, October 13, 2022

Hey, Jorge, this is Mike with PCF, I
have you approved **$128,585** paying
**$156,874** back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                              9:02 AM

Hey, Jorge, this is Mike with PCF, I
have you approved **$128,585** paying
**$156,874** back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
                              12:59 PM

Wednesday, October 19, 2022

                        ⌄

Hev .Jorge, this is Mike with PCF, I

    |   

     ⬡     

**EXHIBIT A**

12:32                                             🔋 ❊ 🛜 ⏸ 99%🔋

< 　 　 **+1 430-444-5137** ⌄ 　 　 ⋮

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
　　　　　　　　　　　　12:59 PM

Wednesday, October 19, 2022

Hey, Jorge, this is Mike with PCF, I
have you approved $128,585 paying
$156,874 back with weekly/monthly
payment options Send me your email
I'll send you the docs needed to get
this done.
　　　　　　　　　　　　9:41 AM

9:55 AM   **What's your website**

Wednesday, October 26, 2022

Hi, Jorge, Mike with PCF, we have an
approval for you here, $128,585 paying
$144,950 back with weekly/monthly
payment options. Send me your
email I'll send you the docs needed
to get this done if you'd like to move
forward.
　　　　　　　　　　　　8:50 AM

Thursday, October 27, 2022

8:27 AM   Salaiz.ep@gmail.c ⌄

    　 | 　   

　　　　||| 　　　　　◯ 　　　　　<

**EXHIBIT A**

 Gmail

**Erik Salaiz <salaiz.ep@gmail.com>**

---

## Business Funding
1 message

---

**mike@premiumcapitalfund.com** <mike@premiumcapitalfund.com>
To: Salaiz.ep@gmail.com

Thu, Oct 27, 2022 at 9:30 AM

Hello Jorge,

In order to receive the funding as discussed, we will need the following documents:
- 3 Months of your most recent bank statements
- Application sent VIA DocuSign

If you have any questions, or concerns please give me a call/ text!

Mike Taylor
VP at Premium Capital
P (917) 433-2230

Exhibit B

 Gmail

**Erik Salaiz <salaiz.ep@gmail.com>**

---

# Please sign your agreement
1 message

---

**Mike Taylor via DocuSign** <dse_NA4@docusign.net>
Reply-To: Mike Taylor <mike@premiumcapitalfund.com>
To: Jorge Duron <Salaiz.ep@gmail.com>

Thu, Oct 27, 2022 at 9:30 AM

---



Mike Taylor sent you a document to review and sign.

**REVIEW DOCUMENT**

**Mike Taylor**
mike@premiumcapitalfund.com

Please sign the document.

Powered by **DocuSign**

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:

Exhibit B